**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOSE GONZALEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:11-cv-01094** |
| **REED-JOSEPH INTERNATIONAL** | § | |
| **CO.,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

---

### MEMORANDUM & ORDER

---

Before the Court is Defendant Reed-Joseph's Motion for Partial Summary Judgment (Doc. No. 307) and Motion for Summary Judgment (Doc. No. 309). Also before the Court is Defendant Wildlife Products's Motion for Judgment and Motion for Summary Judgment (Doc. No. 299). After considering the Motions, all responses and replies thereto, and the applicable law, the Court concludes that Reed-Joseph's Motion for Partial Summary Judgment should be **GRANTED,** Reed-Joseph's Motion for Summary Judgment should be **GRANTED in part** and **DENIED in part**, and Wildlife Products's Motion for Judgment and Summary Judgment should be **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

This case involves a products liability claim brought by Plaintiff, Jose Gonzalez ("Plaintiff" or "Gonzalez"), against Defendants R-J Int'l, Inc., d/b/a Reed-Joseph International Company ("Reed-Joseph"), ABA Pyrotechnick, GmbH ("ABA"), and

Wildlife Control Technology d/b/a Wildlife Products ("Wildlife Products"). On October 14, 2010, Plaintiff was stationed at a landfill as a laborer. (Jose Ariel Gonzalez Dep ("Plaintiff Dep") 17:22-18:6, Sept. 27, 2012.) His job responsibilities included picking up trash at the landfill and firing a Screamer Siren System for bird control. (Plaintiff Dep. 18:3-4, 22:3-7.) To fire the Screamer Siren, the operator loads the Screamer Siren into the Launcher and inserts the Igniter cap. *Id.* The Screamer Siren System launches the Screamer Siren into the air, where it emits both a whistling sound and sparks. (*Id.* at 56:38.) Plaintiff alleges that he was injured at the McCarty Road Landfill on October 14, 2010 when the Screamer Siren allegedly malfunctioned. As a result of the malfunction, Plaintiff allegedly sustained injuries including first, second and third degree burns to his arms, hands and chest.

Plaintiff alleges that ABA manufactured the Screamer Sirens, which were imported and distributed by Reed-Joseph to Wildlife Products. Wildlife Products sold all three product components to the worksite where the alleged accident occurred, Allied Waste, n/k/a Republic Services and/or McCarty Road Landfill TX, L.P.[1]

Both Reed-Joseph and Wildlife Products' motions are discussed in this Order because the facts are the same, and all three Defendants have chosen to join, at least in part, all dispositive motions filed in this case. (Doc. No. 314, 317, 320.) The Court considers each motion below.

## II. LEGAL STANDARD

### A. Judgment on the Pleadings

---

[1] Plaintiff was employed by Labor Ready, and was stationed at a landfill operated by Republic Services, and owned by McCarty Road landfill. (Jose Ariel Gonzalez Dep 18:3-4, Sept. 27, 2012.)

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). Accordingly, "the inquiry focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits." *Id.* (quotation omitted). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc*., 278 F.3d 417, 420 (5th Cir. 2001).

Under Fed. R. Civ. P. 8(a)(2), a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The Supreme Court analyzed the pleading requirement of Rule 8(a)(2) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) in connection with a 12(b)(6) motion to dismiss. Since the standard for motions to dismiss and motions for judgment on the pleadings is the same, the Fifth Circuit has applied *Iqbal* and *Twombly* in considering motions under Rule 12(c). *Jebaco, Inc. v. Harrah's Operating Co., Inc*., 587 F.3d 314, 318 (5th Cir. 2009). Thus, a motion under Rule 12(c) should be granted if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**B. Summary Judgment**

Summary judgment is warranted when a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

## III. ANALYSIS

### A. Product Liability Actions Outside of § 82.003(a)

Because Defendants argue that many of Plaintiff's claims are foreclosed by the applicable sections of the Texas Civil Practice and Remedies Code, which define a "products liability action" as:

> [A]ny action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective

product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE § 82.001(2).

Plaintiff's claims are fundamentally based in a product defect, his claims are governed by this section. Since Reed-Joseph and Wildlife Products are non-manufacturing sellers, Section 82.003(a) is directly relevant to Plaintiff's claims against Reed-Joseph and Wildlife Products.   This section of the Texas Civil Practice and Remedies Code provides that a seller who does not manufacture a product is not liable for harm resulting from the product unless a claimant pleads and eventually proves one of the following:

(1)     the seller participated in the design of the product;
(2)     the seller altered or modified the product resulting in the claimant's harm;
(3)     the seller installed the product or had the product installed on another product and the claimant's harm resulted from the installation;
(4)     the seller exercised substantial control over the content of an inadequate warning or instruction that accompanied the product;
(5)     the seller made an express factual representation about some aspect of the product that was incorrect; the claimant relied on the representation in obtaining or using the product; and the claimant would not have been harmed or would have not have suffered the same degree of harm had the product been as represented;
(6)     the seller actually knew of a harmful defect in the product when it was sold; or
(7)     the manufacturer of the product is insolvent or not subject to the  court's jurisdiction.

TEX. CIV. PRAC. & REM. CODE § 82.003.

Plaintiff and Defendants disagree on the nature of these exceptions. Plaintiff argues that, as soon as any one of the exceptions in § 82.003(a) is satisfied, a claimant may pursue his common law products liability claims described in § 82.001(2). Plaintiff needs to satisfy only one exception to bring his product liability claim (e.g., to bring any

"action … based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories"). Plaintiff argues that this conclusion is further required by the fact that some of the subsections do not relate to substantive law. For example, TEX. PRAC. & REM. CODE § 82.003(a)(7)(A)&(B) (providing exception to the immunity rule where the manufacturer is insolvent or not subject to jurisdiction) does not, on its own, indicate a theory of liability.

Defendants argue that Plaintiff's common law claims are precluded by the plain meaning of § 82.003. Plaintiff's claims of negligence, gross negligence, strict liability, design and manufacturing defects, breach of implied warranty, and punitive damages do not fall within the seven allowable exceptions under which liability can be imposed against a non-manufacturing seller. (Doc. No. 371.) For example, with regard to negligent undertaking, Wildlife Products argues that "there is no exception in Section 82.003 for 'negligent undertaking' and therefore a 'seller' in a 'product liability action' cannot held be liable under such a theory." (Doc. No. 336.) In support of this proposition, Defendants cite *Garcia v. Nissan Motor Co., Ltd.*, 2006 WL 869944 (S.D. Tex. March 30, 2006) *2, Fn. 5 (noting that the plain language of 82.003 precludes "extra-82.003" claims as it applies to "any action" under "any…theory"); *State Farm Lloyds v. Polaris Indus., Inc.*, CIV.A. 6-12-19, 2012 WL 3985128 (S.D. Tex. Sept. 11, 2012) ("Texas federal district courts have held that any theory of recovery pleaded against a nonmanufacturing seller must satisfy one of the seven immunity exceptions contained in section 82.003(a), even if the allegations would otherwise state a valid claim under Texas law"); *see also Alonso ex rel. Estate of Cagle v. Maytag Corp.*, 356 F. Supp. 2d 757, 761

(S.D. Tex. 2005).

After closely analyzing these cases, the Court finds Plaintiff's reading of the statute more coherent in concluding that section 82.003(a) is simply a gatekeeper for Plaintiff to bring a claim against Defendants. The Court does not read the cases cited by Defendants to hold that a plaintiff's common law product liability claims are foreclosed simply because they do not fit within the wording of one of the § 82.003(a) exceptions. Rather, these cases first conclude that a plaintiff has not met one of the exceptions in § 82.003(a); thus, a court cannot consider an otherwise valid claim under Texas law, such as negligence or breach of implied warranty. *See Garcia*, 2006 WL 869944, *6 (S.D. Tex. Mar. 30, 2006) (after concluding that §§ 82.003(a)(6) and 82.003(b) did not apply, the Court dismissed Plaintiff's negligence claim); *Casas v. The Tire Corral, Inc.*, CIV.A. M-04-123, 2005 WL 6773889 (S.D. Tex. Mar. 31, 2005) (court discussed §§ 82.003(a)(3), 82.003(a)(5), 82.003(a)(6) before dismissing Plaintiffs claims for strict liability, gross negligence, breach of warranty, and/or misrepresentation); *Polaris Indus., Inc.*, 2012 WL 3985128, *2, (because no statutory immunity exception applied, court found that Plaintiff had failed to state a viable negligence claim against nonmanufacturing seller). Thus, the Court finds that it must first consider if a § 82.003(a) exception applies, and only if so, should it proceed to consider Plaintiff's common law causes of action.

Reed-Joseph and Wildlife argue that none of these exceptions apply. Specifically, Wildlife argues that Plaintiff has not adequately pled subsections (1), (2), (4), (5), and (6). While Plaintiff mentions (1), (2), or (4) in his Complaint, he does not reference Defendants' arguments regarding these exceptions in his Responses. However, Plaintiff

does argue that subsections (5) and (6) are applicable. Additionally, Plaintiff argues that, if the Court grants Defendant ABA's Motion to Dismiss because of a lack of personal jurisdiction, subsection (7) will apply.

The Court finds that Plaintiff has not adequately pled subsections (1), (2), or (4) and grants Wildlife Products's 12(c) motion. The Court additionally finds that Wildlife Products is entitled to summary judgment on subsection (5), but that Reed-Joseph's summary judgment motion on the same subsection, (5), must be denied. The Court finds that there is a genuine issue of material fact with regard to subsection (6) for both Defendants. Finally, the Court reserves judgment on (7) until ABA's Motion to Dismiss on Personal Jurisdiction is resolved. The Court discusses the reasons, in more detail, as to why exceptions (5) and (6) are applicable below, but notes for now that, because summary judgment must be denied on at least one statutory exception, Plaintiff's common law causes of action are not immediately foreclosed.

**B. Reed-Joseph's Motion for Partial Summary Judgment**

One such common law cause of action is Plaintiff's marketing defect claim. In order to prevail on Plaintiff's marketing defect claim, Plaintiff must satisfy the following five prong test:

> (1) A risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product;
>
> (2) The supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed;
>
> (3) The product has a marketing defect;
>
> (4) The lack of warnings or instructions renders the product unreasonably dangerous to the ultimate user or

consumer; and,

(5) The failure to warn or instruct causes the user's injury.

*Williams v. Toyota Motor Corporation*, No. 4:08-cv-487, 2009 WL 305183, *5 (E.D. Tex. Feb. 6, 2009). In this case, the warnings on the actual Screamer Sirens themselves stated that the operator should "Read the full instructions and warnings on box before use," and also to "Keep away from heat and all flames." (Doc. No. 302-9 [Picture of Screamer Siren]). The warning on the box required the operator to

> Always Wear Ear and Eye Protection. Fire from 15 mm signal launchers using 6 mm (.22 cal.) blank cartridges for primer. Insert open end of SCREAMER SIREN cartridge in clean launcher muzzle. Always fire at minimum 45° angle above ground. Do not fire at humans, livestock, buildings, dry fields, forests of any other flammable materials or liquids. Do not – never – fire from a vehicle. May cause fire or injuries. For bird and wildlife control only. Do not use for any other purpose. WARNING – DANGER. ALWAYS WEAR EAR AND EYE PROTECTION. Keep out of reach of children. To be handled only by adults who have been fully instructed in use. Use outdoors only. Avoid exposing to flames or high heat. Do not ignite in hand. To destroy – soak in water. Dangerous to swallow. Store in a dry place protect from moisture. MANUFACTURER GUARANTEES CARE IN MANUFACTURE BUT ASSUMES NO OTHER RESPONSIBILITY.

Doc. No. 302-10 (Picture of Screamer Siren Box).

Defendant Reed-Joseph seeks dismissal of Plaintiff's marketing defect claim on three grounds. First, as an affirmative defense, Reed-Joseph argues that there is no duty to warn because of the open and obvious danger when operating the Screamer Siren System. Reed-Joseph also argues that Plaintiff's failure to read warnings negates Plaintiff's evidence of causation. Finally, Plaintiff allegedly failed to provide any

evidence of a marketing defect, including the requisite expert testimony to establish causation for his marketing defect claims.

The Court will start with Reed-Joseph's obvious danger argument. The existence of a duty to warn of dangers or instruct as to proper use of a product is a question of law. *Joseph E. Seagram & Sons, Inc. v. McGurie,* 814 S.W.2d 385, 387 (Tex. 1991). Texas law does not require a manufacturer or distributor to warn of obvious risks. *See Caterpillar*, *Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995). Thus, if the Court finds there is no necessity for a warning, then a warning—adequate or not—does not need to be provided. The Texas Supreme Court has held that the duty to warn is limited in scope and applies only to hazards of which the consumer is unaware. *See Caterpillar*, *Inc.*, 911 S.W.2d at 382; *see also Keene v. Sturm, Ruger & Company, Inc.*, 121 F.Supp. 2d 1063, 1069 (E.D. Tex. 2000). "The consumer's perspective is that of an ordinary user of the product, not necessarily the same as that of an ordinary person unfamiliar with the product." *Sauder Custom Fabrication, Inc. v. Boyd,* 967 S.W.2d 349, 351 (Tex.1998). Moreover, "[w]hen the foreseeable users of a product have special training, a supplier has no duty to warn of risks that should be obvious to them, even if persons without such training would not appreciate the risks." *Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 183 (Tex.2004).

Although there is no Texas case law specifically designating the flammable nature of fireworks as an 'open and obvious' danger, there are analogous cases from which this Court receives guidance. *See Coleman v. Cintas Sales Corp.,* 100 S.W.3d 384, 386 (Tex.App.-San Antonio 2002, pet. denied) (holding, as a matter of law, that it is commonly known that non-flame retardant clothing will burn if exposed to a flame);

*Joseph E. Seagram & Sons, Inc.,* 814 S.W.2d at 388; *see also Diggles v. Horwitz,* 765 S.W.2d 839, 842 (Tex.App.—Beaumont 1989, writ denied) (no duty to warn of risks associated with improper use of handgun because "there is no duty to warn of hazards which are obvious or actually known."); *Beans v. Entex, Inc.*, 744 S.W.2d 323, 325 (Tex. App. 1988) (no duty to warn of asphyxiation due to carbon monoxide inhalation from unvented gas heating); *Hanus v. Texas Utilities Co.,* 71 S.W.3d 874, 880 (Tex. App. 2002) (court affirmed summary judgment on a marketing claim, finding that the danger from digging into buried power lines was both obvious and commonly known).

This Court finds *Ritz Car Wash, Inc. v. Kastis,* 976 S.W.2d 812, 814 (Tex. App 1998), particularly instructive. In *Ritz Car Wash,* a mechanic who was burned while draining gasoline could not prevail on marketing defect claim, because the flammability of gasoline was obvious. The court found that:

> Matheos Kastis was an expert mechanic with over 40 years experience in working on cars. He had worked on gas tanks numerous times over his lengthy career as a mechanic. As an auto mechanic, Matheos Kastis was certainly aware that gasoline is extremely flammable and can be easily ignited. In fact, he testified that it was important to keep ignition sources away from the gasoline. It would be incongruous for the law to require Ritz to warn Matheos Kastis that gasoline contaminated with water is flammable—not only did Matheos Kastis testify that he was aware that gasoline is flammable but it is well known in the community that gasoline is volatile and must be handled with care. We conclude Ritz had no duty to warn Matheos Kastis of the dangers of gasoline contaminated with water because (1) the dangers were well known to Matheos Kastis and (2) it is indisputable that the flammable nature of gasoline is obvious and well known to the community.

The Court notes the importance of taking into account a user with knowledge of the product and specialized training. In this case, Plaintiff received specialized training from his father and supervisor on how to operate the Screamer Siren system over the course of two days. (Plaintiff Dep. 48:8–11.) Additionally, Plaintiff admitted (1) he was

aware that the Screamer Siren and blank cartridges were flammable, and (2) he was aware that the Screamer Siren emitted sparks when it was fired. (*Id.* 55:24–56:13). It was obvious to Plaintiff that he was carrying a bag of flammable Screamer Siren cartridges while firing a product that emitted sparks. (*Id.* 89:12 – 90:13.)

Plaintiff makes two arguments in response to Reed-Joseph's contention that the Screamer Sirens posed an obvious danger. First, Plaintiff argues that Reed-Joseph admits that Gonzalez's employer should have provided extensive instructions and warnings concerning the use of the Screamer, thus admitting that the danger was not open and obvious. It is possible that Plaintiff violated these procedures because he was never instructed as to their existence. (Jose Santos Gonzalez Dep. ("Gonzalez Sr. Dep."), 25:14-18 (testifying that he trained Plaintiff in the use of the Screamer Siren System), 39:25-40:4 (testifying that he did not give an "instruction ... to the laborers on what to do with the bag while they were firing the launcher"), 40:23-41:1 (testifying that he never "instruct[ed] any of the laborers to set the bag down on the ground while they were operating the screamer siren system"), December 13, 2012.) However, Plaintiff did have training in wearing a safety vest, a hard hat, steel-toed boots, and protection eyewear. (Plaintiff's Dep. 54:4-7). Despite the shortcomings in Plaintiff's training, the Court finds that a foreseeable user of this product would have recognized the risk that the fireworks he was carrying were flammable. There is also no question that Plaintiff subjectively did recognize that the Screamer Siren was flammable. (Plaintiff Dep. 55:24–56:13.)

Second, Plaintiff argues that Defendant ABA's expert report endorses an additional warning that would include information about the dangers of operating the bird launcher while carrying an open bag of bird control supplies. (Doc. No. 329-54.) In

actuality, that section of the expert report does not argue that the warnings in place were inadequate, but rather explains the workplace rules and procedures that were already in place. According to the expert report, Austin Moreno, Operations Manager at the McCarty Road landfill at the time of the accident, reported that the workplace rules and procedures for bird control laborers included keeping the work bag containing bird control supplies zipped and closed the whole time, placing the work bag on the ground while operating a bird control device launcher, and carrying the bag over only one shoulder, so it would be easier to slip off in the event of an emergency. *Id.*

It is most unfortunate that Plaintiff's training was lacking. Reed-Joseph, however, is not responsible for this deficiency, nor has Plaintiff suggested that it was foreseeable to Reed-Joseph that Plaintiff would be inadequately trained. The lack of training also does not suggest that Plaintiff was unaware that fireworks were flammable. Since the risk of flammability was obvious to Plaintiff, Reed-Joseph had no duty to warn of it.

Because the Court has found that Reed-Joseph was not required to warn Plaintiff about the nature of operating a flammable object near other flammable objects, the Court does not consider whether Plaintiff read the warning, and whether the expert testimony regarding the warning is sufficient.[2]

## C. Reed-Joseph Motion for Summary Judgment and Wildlife Products's Motion for Judgment and Summary Judgment

Reed-Joseph has also filed a Motion for Summary Judgment on Plaintiff's claims for negligence, gross negligence, and strict liability for design defect, breach of implied

---

[2] The Court's ruling does not preclude Plaintiff from arguing that Defendants should have warned users of the Screamer Siren about known dud and deflagration defects in the product. Depending on whether there was a known defect, Defendants may have been obligated to warn users of the defect. See *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wash. 2d 823, 826, 435 P.2d 626, 629 (1967) (warning appropriate when there is evidence that Defendant was aware of the danger of premature explosion inherent in its bombs and Plaintiff would not discover the danger.)

warranty and punitive damages.

**1. Innocent Seller Defense**

Reed-Joseph and Wildlife Products argue that, as non-manufacturing sellers, they are not liable for any harm caused to Plaintiff by the products. *See* TEX. CIV. PRAC. & REM. CODE § 82.003(a). However, the parties disagree on whether the exceptions listed under § 82.003(a) should be considered affirmative defenses. Reed-Joseph argues that the innocent seller defense is an affirmative defense. When a defendant moves for summary judgment on its affirmative defense, it must show the absence of a genuine issue of material fact and establish each element of its defense as a matter of law. *See Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).

Wildlife Products, on the other hand, argues that the innocent seller defense is not an affirmative defense. Wildlife Products alleges that it cannot be held liable to Plaintiff for any harm caused by the Screamer Sirens unless Plaintiff proves one of the exceptions set forth in TEX. CIV. PRAC. & REM. CODE § 82.003(a). *See* Tex. Civ. Prac. & Rem. Code § 82.003(a) (providing that "[a] seller . . . is not liable . . . unless the claimant proves. . .") (emphasis added); *Alonso*, 356 F. Supp. 2d at 761 (S.D. Tex. 2005) (finding that "Plaintiffs failed to allege any facts establishing Defendants' liability under any of the seven exceptions [in Section 82.003(a)]" and therefore "based on the pleadings, no reasonable probability exists for Plaintiffs to establish" their strict products liability and negligence causes of action against a seller); *Gonzalez v. Estes, Inc*., SA-10-CA-0038-XR, 2010 WL 610778 (W.D. Tex. Feb. 19, 2010) (noting that "[f]irst and most importantly, . . . Plaintiff's pleadings do not allege any specific facts that would invoke an exception to a nonmanufacturing seller's immunity" ). The *Gonzalez* court observed

14

that "Section 82.003 clearly places the burden of proof upon a plaintiff to establish one of the exceptions to nonliability; it is not an affirmative defense." *Id.* at \*14. *Id*. In line with *Gonzalez* and *Alonso*, as well as the statute's plain meaning, the Court finds that the exceptions listed under 82.003(a) are not affirmative defenses. Thus, the usual summary judgment standard applies. The Court proceeds to consider subsections (1), (2) and (4) under the 12(c) standard, since Wildlife Products moves for judgment thereon.

### a. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(1): Seller Participated in Design

In Plaintiff's complaint, Plaintiff argues that Defendants Reed-Joseph, Wildlife Products, and ABA participated in the design of the Product. Under subsection (a)(1), a seller may be held liable for harm caused by a product the seller did not manufacture if the Plaintiff proves "that the seller participated in the design of the product . . . ." Tex. Civ. Prac. & Rem. Code § 82.003(a)(1). Plaintiff does not plead subsection (1) with any specificity, but simply recites that all Defendants participated in the design of the product. There is no evidence to support this claim, and Plaintiff says no more than "ABA was responsible for the design of the Screamer Siren." (Doc. No. 171, ¶ 41.) Plaintiff fails to plead his claims with "facial plausibility" as his complaint includes only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 129 S.Ct at 1949. The Court dismisses Plaintiff's allegation that Wildlife Products participated in the design of the product.

### b. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(2): Physical Control

Plaintiff also pleads, under subsection (a)(2), that a seller may be held liable for harm caused by a product the seller did not manufacture if the Plaintiff proves "that the seller altered or modified the product and the claimant's harm resulted from that

alteration or modification . . . ." Tex. Civ. Prac. & Rem. Code § 82.003(a)(2).  However, Plaintiff does not offer any factual allegations that Wildlife Products altered or modified the Screamer Sirens. Plaintiff's Complaint also makes clear that Reed-Joseph was in the business of marketing, packaging, and distributing the Screamer Siren, Model RJ1 Scare-Away Launcher, and blank cartridges into the stream of commerce. (Doc. No. 171, ¶ 16.) The Screamer Sirens were sold to Wildlife Products and shipped directly to Gonzalez's place of work. *Id.* Accordingly, the Court grants to Wildlife Products judgment on the pleadings with respect to this claim.

**c. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(4): Physical Control**

Under subsection (a)(4), a seller may be held liable for harm caused by a product the seller did not manufacture if the Plaintiff proves "that the seller exercised substantial control over the content of a warning or instruction that accompanied the product; the warning or instruction was inadequate; and the claimant's harm resulted from the inadequacy of the warning or instruction . . . ." Tex. Civ. Prac. & Rem. Code § 82.003(a)(4) (internal lettering omitted). Plaintiff judicially admits that "ABA and Reed-Joseph were responsible for the design of the product packaging and the product warnings." (Doc. No. 171 at ¶ 41.) Plaintiff also admits that the Screamer Sirens—as packaged by Reed Joseph—were sold to Wildlife Products and shipped directly to Plaintiff's workplace. Thus, Plaintiff has not adequately pled that Wildlife Products exercised substantial control of a warning or instruction that accompanied the Screamer Sirens.

**d. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(5): Express Factual Representation**

Under subsection (a)(5), a seller may be held liable for harm caused by a product the seller did not manufacture if the Plaintiff proves:

> that the seller made an express factual representation about an aspect of the product; the representation was incorrect; the claimant relied on the representation in obtaining or using the product; and if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm . . . .

Tex. Civ. Prac. & Rem. Code § 82.003(a)(5) (internal lettering omitted).

Plaintiff argues that, because Wildlife Products and Reed-Joseph may have been aware of pre-incident problems with the Screamer Sirens and never told their customer to stop using the product, they expressly misrepresented the safety of the Screamer Sirens. At most, Wildlife Products implied by silence that the Screamer Sirens were safe to Plaintiff or his employer. Summary judgment is appropriate for Wildlife Products because Plaintiff can not point to any express factual statements made by Wildlife Products regarding the product's safety.

Unlike Wildlife Products, Reed-Joseph was involved in testing the product before Plaintiff's alleged accident. During this initial testing, Reed-Joseph found a one percent failure rate in the Screamer Sirens. (Barthall Joseph Dep. 62:10-21.) Reed-Joseph's Vice President and Sales Manager, John Barthall Joseph, III found that a small number of the Screamers would rapidly burn or deflagrate closer to the ground than they were supposed to. (*Id.* 63:4-22.) Despite Reed-Joseph's initial finding of a one percent failure rate, the failure rate at the landfill was much higher. Around the same time, Moreno, manager at the landfill, was communicating with Susan Osterhout at Wildlife about "serious issues" with the Screamer Siren. Moreno said that 50% to 90% of the bird bombs were going bad. (Doc. No. 329-13.) Osterhout forwarded Moreno's emails to Dana Mann at Reed-

Joseph, asking Mann what she thought. Although testing had found a one percent failure rate, Mann replied, "We tested 200 rounds here and we didn't have any problems." The Court finds that a trier of fact could find that this statement is an incorrect factual representation.

However, in order for Plaintiff to prove that Reed-Joseph should be held liable for harm under subsection (5), Plaintiff must also prove that claimant relied on the representation and would not have been harmed by the product or suffered the same degree of harm if not for that representation. Wildlife Products arguably relied on the representation of Reed-Joseph that the Screamer Sirens were safe to use, because Wildlife Products continued to sell the product to Plaintiff's landfill. However, Wildlife Product was not the claimant that was harmed. Rather, it was Plaintiff. The Court does not find that Plaintiff's claim is necessarily foreclosed by this fact—and finds a similar theory used in *Helm v. Moog,* 4:11-CV-109-Y, 2011 WL 3176439 (N.D. Tex. July 27, 2011). Plaintiff sought damages after an unsuccessful surgery. Plaintiff's surgeon relied upon defendants' statements that the Accufuser pain pump was suitable for use after shoulder surgery, but it was Plaintiff, not the surgeon, who suffered permanent damage to his shoulder joint, and sued a number of Defendants who had designed, manufactured, and distributed the pain pump. The *Helm* court held that, because the Defendants told the Plaintiff's surgeon that the pain pump was safe for surgery, Plaintiff's theory was plausible under a 82.003(a)(5) claim, and survived a 12(b)(6) challenge. Similarly, a trier of fact could find that Reed-Joseph made an express factual representation that was incorrect, was relied upon, and resulted in harm to Plaintiff. Therefore, the court must deny Reed-Joseph summary judgment as to subsection (5).

**e. TEX. CIV. PRAC. & REM. CODE § 82.003(a)(6): Actual Knowledge of Harmful Defect**

In order to meet the requirements of § 82.003(a)(6), Plaintiff must prove that Reed-Joseph and Wildlife Products knew of the defect at the time it supplied the product, and that this defect harmed Plaintiff. Because both parties acknowledge there were problems with the Screamer Siren before Plaintiff's accident, the Court recognizes that the precise nature of Plaintiff's accident is relevant to whether Reed-Joseph and Wildlife Products had actual knowledge of the particular defect that caused his accident. The Court notes that there are some inconsistencies in Plaintiff's description of the accident.

Two incident reports were prepared on the same day Plaintiff was injured by his employer, and reported the following:

> "Labor Ready temp laborer sustained burns when defective pyro projectile exploded at the tip of gun and fell into pyro bag, igniting the bag and contents immediately." (Doc. No. 329-52)

> "[Employee] fired flare gun into the air when noise making portion fell back to earth into a bag of additional flares which caught fire." (Doc. No. 329-53)

Osterhout, a manager with Wildlife Products, sent an email to a Reed-Joseph representative, describing the incident and then stating, "this was his initial complaint prior to the accident." (Doc. No. 329-14 [Email from Osterhout to Mann]). Gonzalez's deposition, taken two years after the incident, describes the accident as well. The Plaintiff testified that he fired the launcher, and the cartridge went up a little bit and turned around and fell right into the bag with the rest of the cartridges. (Plaintiff Dep. 89:10-14.) Plaintiff could not say how high it went before it turned around and fell into the bag. (*Id.* 89:17-20). Plaintiff did not see if it turned around in the air, or how high it went before it turned, because it happened so quickly (*Id.* 92:16-19.) Gonzalez's manager, Molina,

helped cut Gonzalez's pants off since they were burning from the accident. He told Gonzalez he had seen part of the incident, and had seen the cartridge falling into the bag. (*Id.* 95:2-12.)

The Court recognizes that ambiguity exists regarding whether 1) the projectile exploded at the tip of the gun and fell directly into the pyro bag (as was reported in the first accident report), 2) the projectile was launched and "fell" into the bag, or 3) the projectile "turned" and fell into the bag. Any differences present in Plaintiff's versions of the accident would go to his credibility, an issue for the trier of fact. *United States v. Kossa*, 562 F.2d 959, 962 (5th Cir. 1977). Regardless, there is a clear fact question as to whether Reed-Joseph and Wildlife Products were aware of the defect that caused the accident. Plaintiff alleges that Defendants Wildlife, Reed-Joseph and ABA were involved in communications regarding a safety problem with the Screamer Siren during the 23-day period leading up to Gonzalez's incident (Doc. No. 329-1 to 329-15 1-15; Susan Osterhout Dep. 45:18—47:13, 50:3-51:25, 54). Here is a sampling of the safety hazards documented in these pre-incident communications:

- "25% of the bangers and screamers are not working properly," (Doc. No. 329-1)

- "they are exploding right out of the end of the muzzle and not going up in the air and exploding;" (Doc. No. 329-1)

- "I just received an email from the second landfill that has problems"; (Doc. No. 329-1)

- "It very well may be a 'bad batch;'" (Doc. No. 329-2)

- "They are having a bad problem right now;" (Doc. No. 329-4)

- "I would say the number they were giving me (3 out of 5) going bad was pretty accurate. What are we going to do with this? That is 60% bad!!!!!;" (Doc.

No. 329-9)

- "We are having some serious issues with the yellow bird bombs here. Order that came in last Friday Oct. 8th – 9 out of 10 were going bad . . . Order that came in last Monday Oct. 11th – about 50% of them is going bad." (Doc. No. 329-12)

Defendants argue that Plaintiff's own accident was unrelated to these documented problems with the Screamer Sirens. Defendants allege that Plaintiff's own description of the Screamer Siren's behavior is inconsistent with the performance issues that had been reported to Defendants before Plaintiff's accident. Moreno, manager at the landfill, claims that the only issue ever reported before Plaintiff's accident was that some Screamer Sirens weren't flying high enough and weren't always making a whistling sound. (Agustin Moreno Dep. 145:14-149:25). Moreno claims that, when they had reports of "bad shots," those reports did not refer to the Screamer Siren blowing up at the tip of the muzzle or turning around midair to come back to the operator (*Id.* 146:4-7, 146:15-19).

However, Barthall Joseph, of Reed-Joseph, described known issues with Screamer Sirens blowing up in the tip of the muzzle. Barthall Joseph acknowledged that Reed-Joseph was aware of the problems and actually tested the Screamer Sirens after the reports of the problems came in. (Barthall Joseph Dep. 89:5-22) Barthall Joseph said that the problem was that the Screamer Sirens would deflagrate quickly right out of the muzzle, and that, instead of making a screaming noise, "they would propel themselves a certain amount down range…and sort of went silent." *Id.* During the first tests, the problem had a frequency of one percent, and was determined to be a performance issue that would not harm a user. (88:14-25.) However, after Reed-Joseph "received a report of

major problems from a large customer in Houston," the company went ahead to test more cartridges, and "60% of the cartridges exploded in the muzzle." (Doc. No. 329-34.)

Reed-Joseph represents that Plaintiff saw the Screamer Siren turn and boomerang back to him, a Screamer Siren malfunction that should be considered entirely distinct from the problems that had been reported. In actuality, Plaintiff reported that he did not necessarily see the Screamer Siren "turn" in the air, and that it is possible that it either turned or fell. Plaintiff also initially described a cartridge that exploded in the muzzle and fell into his pyro bag. Both of these descriptions are consistent with reports that Reed-Joseph *was* aware of the relevant malfunction before Plaintiff's accident.

Although Wildlife Products was not involved in the testing, they were a part of the majority of email communications regarding the defect. (Doc. No. 329-1 to Doc. 329-15.) For example, an email sent from Susan Osterhout, sales manager at Wildlife, described that "25% of the screamers are not working properly. What the indication is, is that they are exploding right out of the end of the muzzle and not going up in the air and exploding" (Doc. No. 329-1.) Despite Defendants' claims to the contrary, this description is similar to Plaintiff's initial report of the incident.  Plaintiff has also presented emails indicating that Reed-Joseph and Wildlife Products were aware of the presence of irregular moisture or humidity that was affecting the boxes the Screamer Sirens were stored in (Doc. No. 329-10.) Defendants argue that these emails describing "bad shots," "bad problem," "bad batch" all refer to the Screamer Siren not going high enough. However, the Court draws all justifiable inferences in the nonmovant's favor, and finds there is an issue of fact as to whether the defects that Defendants were aware of *before*

Plaintiff's accident were the same defects that caused Plaintiff's accident, regardless of the fact that Defendants chose to classify the problem as a "performance issue."

Wildlife Products argues that Plaintiff is mischaracterizing statements made by Agustin Moreno, manager of the Landfill, to Susan Osterhout of Wildlife Products. In his emails, Moreno said that the "bangers and screamers are not working properly" and that "they are exploding right out of the end of the muzzle and not going up in the air and exploding." These statements were later forwarded to Reed-Joseph. Wildlife Products points to deposition testimony clarifying that these individuals never perceived a safety problem, only a performance problem with the Screamer Sirens. Similarly, Reed-Joseph now contextualizes these problems as performance issues, rather than safety issues. Thus, Defendants argue that, because they did not think it was a safety issue, Plaintiff is mischaracterizing the evidence. However, Plaintiff presents facts suggesting the defect was a safety issue. When asked if the prospect of one of the Screamers exploding right out of the muzzle would be potentially dangerous to the user, President of Wildlife Products, Michael Taber, said "Yes".  Plaintiff's expert, Lawrence Weinman, has concluded that the prior problems with the Screamers were a safety hazard. (Doc. No. 329-46.) Additionally, when Defendants concluded its testing and investigation of the Screamers, Marcus Pfleghardt, CEO and corporate representative of ABA wrote to Barthall Joseph, at Reed-Joseph, that his "suggestion is to ship them all back to Germany, so that nobody can be hurt." (Doc. No. 329-42.) Accordingly, ABA recalled over 1 million of its Screamers. Plaintiff has introduced a genuine issue of material fact as to whether Defendants knew about the defects in the Screamer Sirens, and improperly characterized them as 'performance defects.'

Reed-Joseph and Wildlife Products also argue that there is no evidence that the specific Screamer Siren Plaintiff fired on October 14, 2010 was defective. On the day of the accident, Plaintiff filled his gym bag with multiple boxes of Screamer Sirens from the storage room. (Plaintiff Dep. 31:7-33:23, 35:6-11.) In the twelve months prior to Plaintiff's accident, Republic Services and/or Allied Waste purchased more than 250,000 screamer sirens from Wildlife Products. (Doc. No. 299-2.) None of the materials Plaintiff used that day were recovered. Thus, Defendants argue that Plaintiff cannot prove when the Screamer Siren he fired was purchased by the landfill. *See Rubin v. DaimlerChrysler Corp.*, 2005 U.S. Dist. LEXIS 42102, *13-21 (S.D. Tex. 2005) (finding that no reasonable fact finder could conclude that the defendant sellers "had actual knowledge about a gear shift defect in the 1999 Jeep Grand Cherokees when the Jeep was sold to Roberts in July 1999").

Plaintiff argues that at the rate at which Screamer Sirens were used, it is likely that Plaintiff fired a Screamer Siren that was purchased in the most recent batch of Screamer Sirens. Plaintiff supports this argument with testimony from Barthall Joseph, who states that the accident likely took place using a cartridge that was from the tail end of the existing inventory. (Barthall Joseph Dep. 252:1-25.) Wildlife Products points out that it is possible the Screamer Siren used on that day could have come from a different batch because Barthall Joseph could not say, with certainty, which batch Plaintiff's Screamer Siren came from. *Id.* However, Barthall Joseph had reason to believe that the batch of Screamer Sirens that Plaintiff was using had been recently shipped. This is because Reed-Joseph kept records of the products, and would not order any more Screamer Sirens if they had Screamers left. (Barthall Joseph Dep.250:1-252:25.)

The Court draws all justifiable inferences in the nonmovant's favor, and finds there is an issue of fact regarding whether the two companies had actual knowledge of the defect that caused Plaintiff's injury. Thus, the Court denies Reed-Joseph and Wildlife Products's request for summary judgment with regard to § 82.003(a)(6).

## 2. Negligent Undertaking

Plaintiff argues that Defendants are liable under a "negligent undertaking" theory. The Texas Supreme Court recognized this type of claim in *Torrington Co. v. Stutzman,* 46 S.W. 3d 829, 838 (Tex. 2000). *Torrington* was decided in 2000, three years before Section 82.003 was adopted. *See* Acts 78th Leg., ch. 204, § 5.02, eff. Sept. 1, 2003. However, this Court finds that *Torrington* is still good law. In that case, Torrington was sued after a Navy helicopter crashed and killed two Marines. *Torrington Co*., 46 S.W.3d at 839. Torrington's subsidiary had manufactured the helicopter bearing that had failed. *Id*. After an earlier crash of a civilian helicopter with a similar bearing, Torrington had written a letter to Bell Helicopter stating that it was "most anxious to participate in any evaluation you are currently performing." *Id*. The letter also stated that Torrington intended to "continue to actively participate with the [National Transportation Safety Board] in their investigation." *Id*. The Texas Supreme Court held that Torrington's letter to Bell Helicopter was an undertaking of some type, and that the facts about the scope of the assumed duty should be determined by the jury.

To establish a negligent undertaking cause of action, a plaintiff must meet four criteria: (1) First, that the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection, but (2) that the defendant failed to exercise reasonable care in performing those services, and that either (3) the plaintiff

relied on the defendant's performance, or (4) the defendant's performance increased the plaintiff's risk of harm.

Plaintiff argues that Wildlife relayed communications about serious problems with the Screamers as early as September 20, 2010, twenty-three days before Plaintiff's accident. Reed-Joseph learned that Screamers were "exploding in the muzzle" (Doc. No. 329-1 to Doc. No. 329-15, Barthall Joseph Dep. 39:19-42:24.) Rather than ignoring these problems, Reed-Joseph undertook an investigation of its customer's complaints and began testing the Screamers. Wildlife Products was not involved in testing the product. (Michael Taber Dep. 176:6-11, October 26, 2012.) Despite learning of some defects ("deflagration" or "exploding"), Reed-Joseph did not advise Wildlife or its customer to stop using Screamer Sirens at that time. (Barthall Joseph Dep. 39:19-42:24). Plaintiff argues that there is a fact issue that Reed-Joseph failed to exercise reasonable care in its communications with its customer of its investigation of the Screamer Siren defect. Barthall Joseph admitted that, after the accident, it was made clear that the problems with the Screamer Sirens were more numerous than they had earlier believed. Barthall Joseph then returned to retest the Screamer Sirens and confirmed that the malfunction rate was higher than the one percent Reed-Joseph had estimated earlier. (Barthall Joseph Dep. 215:17-25-216:1-8.) Barthall Joseph admitted that it was poor judgment to wait until he actually went there and saw the problem with his own eyes. (*Id.* 218:8-12.)

Reed-Joseph makes two main arguments against Plaintiff's negligent undertaking claim: 1) it was not pled in Plaintiff's complaint and 2) negligent undertaking can be brought only against a manufacturer, not a seller. The Court recognizes that Plaintiff did not specifically plead negligent undertaking in his Ninth Amended Complaint. However,

26

Plaintiff did plead negligence—stating that, "by continuing selling the products while continuing to determine or identify the discrete source of the defects, defendant breached a duty of care and acted in disregard to the safety of the users of the Screamer Siren." Rule 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Plaintiff put Reed-Joseph on notice that it engaged in negligent undertaking by continuing to sell the product while trying to determine the nature of the defect through investigation.

The Court has already addressed Reed-Joseph's second argument in Section III(A). Reed-Joseph argues that § 82.003 forecloses Plaintiff's negligence claim. However, since this Court has found that Plaintiff has raised a genuine issue of material fact with regard to at least one exception under § 82.003, Plaintiff's negligent undertaking claim survives summary judgment with regard to Reed-Joseph. Wildlife Products argues that the undisputed evidence shows that the only testing that was done was by Reed-Joseph, and that Wildlife Products did not participate in this testing. (Michael Taber Dep. 176:6-11.) The Court finds that Plaintiff has failed to raise a genuine issue of material fact with respect to his negligent undertaking claim against Wildlife Products, and summary judgment is appropriate.

### 3. Breach of Implied Warranty

Reed-Joseph also moves for summary judgment on Plaintiff's breach of implied warranty claim. A breach of implied warranty claim can be based on a defect of design, material or  manufacture. *Clark v. DeLaval Separator Corp.*, C.A.5 (Tex.) 1981, 639 F.2d 1320. The elements of a cause of action for breach of the implied warranty of merchantability are: (1) the defendant sold or leased a product to the plaintiff; (2) the

product was unmerchantable; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury. *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331 (Tex. App. 2003).

Reed-Joseph argues that Plaintiff did not notify Reed-Joseph of his warranty claim within a reasonable time of discovering the alleged issues. The Court disagrees. The notice requirement under Section 2.607 is to be liberally construed. *See Ganz v. Lyons Partnership, L.P.,* 961 F.Supp. 981, 992 (N.D.Tex.1997) (citing *Reynolds Metals Co. v. Westinghouse Elec., Corp.,* 758 F.2d 1073, 1078 (5th Cir.1985)). "A general expression of the buyer's dissatisfaction may be sufficient to comply with § 2.607." *Lochinvar,* 930 S.W.2d at 190 (citing *Melody Home Mfg. Co. v. Morrison,* 502 S.W.2d 196, 203 (Tex.Civ.App.-Houston [1st Dist.] 1973, writ ref 'd n.r.e.)); *see also Hull,* 365 S.W.3d at 44; *Tire–Tech,* 110 S.W.3d at 201. By reporting the incident to his employer who conveyed the details of the accident to Defendants, Plaintiff made Reed-Joseph aware of the alleged defect of the product. Pursuant to Comment 4 to § 2.607, "the notification must 'be sufficient to let the seller know that the transaction is still troublesome and must be watched' and, at the same time, 'be such as informs the seller that the transaction is claimed to involve a breach' "and thereby allow for "settlement through negotiation." *Ganz,* 961 F.Supp. at 992 (quoting Tex. Bus. & Com.Code § 2.607 cmt. 4).   Although Plaintiff did not directly communicate with Reed-Joseph, the accident reports and emails informed Reed-Joseph of the problem, identified Plaintiff's contact information, and provided Reed-Joseph an opportunity to engage in settlement through negotiation. Notice is ordinarily a question of fact, not a question of law. It becomes a question of law only where there is no room for ordinary minds to differ about the proper

conclusion to be drawn from the evidence." *Lochinvar,* 930 S.W.2d at 190 (citing *Carroll Instrument,* 677 S.W.2d at 657).The Court finds that a trier of fact could determine that Defendant Reed-Joseph was put on notice of the breach of warranty.

Reed-Joseph also argues that Plaintiff has not offered any admissible evidence to showcase any problem or defect with the actual fired Screamer Siren. Reed-Joseph also argues that, because Plaintiff is seeking consequential damages, he must prove that his injuries were proximately caused by Reed-Joseph's alleged breach of warranty. As noted above, the actual Screamer Siren which caused Plaintiff's accident was not recovered. Reed-Joseph argues that Plaintiff does not present sufficient expert testimony that a defect in the Screamer Siren proximately caused his injuries. However, Plaintiff has provided an expert report, as well as his own deposition testimony, that the Screamer Siren was defective and did not exhibit the typical behavior of a screamer siren. Plaintiff's expert Weinman reports that:

> Mr. Gonzalez' incident most likely occurred when the Screamer exploded just out of or near the muzzle of the launcher Mr. Gonzalez was using (as had many Screamers before and after Mr. Gonzalez' incident), and then the Screamer, exploding parts of the Screamer, and/or burning portions of the composition ignited the contents of the bag. The most likely cause of the Screamer exploding out of the muzzle in Mr. Gonzalez' incident is a manufacturing defect. The manufacturing defect was most likely a Screamer that had a low-density pyrotechnic composition in the cardboard casing (tube). (Doc. No. 329-44.)

Thus, Plaintiff has offered admissible evidence that the Screamer Siren he used was defective, and his breach of implied warranty claim must survive summary judgment.

**4. Design Defect Claim**

Defendant Reed-Joseph argues that summary judgment is appropriate on Plaintiff's design defect claim. Expert testimony is required to establish a design defect.

*See Nissan Motor Company, Ltd.* v. *Armstrong,* 145 S.W.3d 131, 137 (Tex. 2004) (expert testimony and objective proof required in a case where plaintiff alleged design, manufacturing, and marketing defects). In a design defect products liability claim, the burden is on the Plaintiff to show:

> (1) there was a safer alternative design; and

> (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

TEX. CIV. PRAC. & REM. CODE § 82.005(a)(1)-(2).

Texas courts have long applied a risk-utility analysis that requires, among other things, a safer alternate design. *American Tobacco Co.* v. *Grinnell,* 951 S.W.2d 420, 432 (Tex. 1997). Texas law defines "safer alternate design" as a product design other than the one actually used that in reasonable probability:

> (1) would have prevented or significantly reduced the risk of the plaintiff's personal injury, property damage, or death without substantially impairing the product's utility; and

> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM. CODE § 82.005.

The Court notes that Plaintiff has not responded to Defendant's argument regarding a design defect claim within his Response. The Court further notes that, even if Plaintiff's expert report rendered an opinion that a safer alternative design existed, it is not incumbent upon the Court to discover that evidence. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 915-16 & n. 7 (5th Cir.) *cited by Ragas v. Tennessee Gas Pipeline* Co., 136 F.3d 455, 458

(5th Cir. 1998). Nevertheless, the Court has reviewed Plaintiff's expert report, and finds

that while Plaintiff's expert, Weinman, identifies the type of manufacturing defect

involved, he does not suggest a safer alternative design that would prevent or

significantly reduce the risk of injury without substantially impairing the utility of the

product.[3] (Doc. No. 329-44.) The Court finds summary judgment appropriate for Reed-

Joseph and Wildlife Products.

## 5. Punitive Damages

Punitive damages may be awarded only if claimant proves that the alleged harm

results from: (1) fraud, (2) malice, or (3) gross negligence. Tex. Div. Prac. & Rem. Code

§41.003(a). Plaintiff must prove the elements of exemplary damages by clear and

convincing proof. *Id.*   41.003(b). The Court finds no evidence presented by Plaintiff of

fraud or malice. Under Chapter 41, the term "fraud" refers to "fraud other than

constructive fraud." TEX. CIV. PRAC. & REM. CODE § 41.001(6). Texas law defines

fraud as "an act, omission, or concealment in breach of a legal duty, trust, or confidence

justly imposed, when the breach causes injury to another or the taking of an undue and

unconscientious advantage." *Flanary v. Mills*, 150 S.W.3d 785, 795 (Tex. App.--Austin

2004, pet. denied). Actual fraud, as opposed to constructive fraud, generally involves a

"dishonesty of purpose or intent to deceive." *Id*. Because Plaintiff presents no evidence of

fraud whatsoever, the Court grants summary judgment to Defendants on the issue of

fraud.

---

[3] Weinman indicates that the pyrotechnic composition was not consolidated sufficiently well because the facility did not have the proper equipment or quality control process in place to ensure the pyrotechnic composition was loaded in to the Screamers in a way that would ensure the proper density of the composition. (Doc. No. 329-44, ¶ ¶ 21, 25, 27.)

As to malice, it is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant." TEX. CIV. PRAC. & REM. CODE § 41.001(7); *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 667 (Tex. 2008). Plaintiff alleges malice but has not proffered any evidence of malice. Thus, this basis for recovery of punitive damages is also foreclosed.

Plaintiff's strongest basis for punitive damages is based in gross negligence. Chapter 41 defines "gross negligence" as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE § 41.001(1l). Extreme risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). The "extreme risk" prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather "the likelihood of serious injury" to the plaintiff. *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 327 (Tex. 1993). Additionally, gross negligence contains both an objective and a subjective component. *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570 (Tex.1985). The defendant must have subjective awareness of the extreme risk created by its conduct. *Id.* "The "extreme risk" component of gross negligence recognized in *Williams* is consistent with other jurisdictions: the usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious

32

risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Wal-Mart Stores* , 868 S.W.2d 322, 326 (Tex. 1993).

Plaintiff argues that Defendants realized, before Plaintiff's accident, that Screamer Sirens were deflagrating near the muzzle at a one percent rate. Plaintiff surmises that Defendants knew that in every two boxes of Screamer Sirens, one cartridge would contain a screamer siren that would burn up at the end of the muzzle. Thus, the company should have been aware of the high probability of physical danger to its users. Plaintiff essentially argues that, because the calculation of extreme risk includes both a probability and magnitude measure, a one percent risk of great harm should be considered an extreme risk. However, even if the one percent probability of deflagration is sufficient to meet the objective extreme risk component, the Court finds that Reed-Joseph and Wildlife Products did not proceed with "conscious indifference." Nor did the companies demonstrate that they knew about the peril, but through acts or omissions, demonstrate that they did not care. *Harrison,* 70 S.W.3d at 785. Defendants represent that they did not see the defect as a safety issue, and wanted to investigate it further. (Barthall Joseph Dep. 217:1-9.) Before Plaintiff's accident, Barthall Joseph didn't experience any injures from his testing, and just believed the Screamer Siren was not performing as it should. *Id.*  Negligence and failure in efforts to protect against dangerous conditions are not sufficient to show conscious indifference. *Agrium Us., Inc. v. Clark,* 179 S.W. 3d 765, 768-69 (Tex. App.-Amarillo 2005, pet. denied). Thus, the Court grants Defendants summary judgment on Plaintiff's punitive damage claims.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's claims against Reed-Joseph regarding § 82.003(a)(5), § 82.003(a)(6), negligent undertaking and breach of implied warranty survive summary judgment. The Court grants Reed-Joseph summary judgment on Plaintiff's claims of a marketing defect, design defect, and punitive damages.

Plaintiff's claims against Wildlife Products regarding § 82.003(a)(6) and breach of implied warranty survive summary judgment. The Court grants Wildlife Products 12(c) motion with regard to subsections § 82.003(a)(1), (2), (4), and (5). The Court grants Wildlife Products summary judgment on Plaintiff's claims of design defect, negligent undertaking, and punitive damages.

The Court's ruling regarding the applicability of subsections § 82.003(a)(7) is reserved until the Court rules upon ABA's Motion to Dismiss for Lack of Personal Jurisdiction.

**IT IS SO ORDERED.**

**SIGNED** this the 11th day of April, 2013.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**